**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

WHITNEY BACHAMP-SCHROEDER )
      *Plaintiff* )
vs. ) Case No. 2:25-cv-02360
    )
FARMERS INSURANCE COMPANY, INC. ) **JURY TRIAL DEMANDED**
d/b/a FARMERS INS. EXCHANGE )
*Serve Registered Agent:* )
   Corporation Service Company )
   1100 SW Wanamaker Rd., Suite 103 )
   Topeka, KS 66604 )
          *Defendant* )

**COMPLAINT**

COMES NOW Plaintiff Whitney Bachamp-Schroeder, through counsel, to allege the following for her *Complaint* against Defendant Farmers Insurance Company, Inc.

1. This case arises from Plaintiff's employment and involves claims of employment discrimination and retaliation under the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101-12213 ("ADA").

2. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this case because it is a civil action arising under federal law.

3. Pursuant to 28 U.S.C. § 1391(b), Venue is proper in this District because Plaintiff's employment with Defendant was in Johnson County, Kansas.

4. Plaintiff worked for Defendant for over 15 years (2008-2024). Throughout that time, Plaintiff suffered from diagnosable anxiety. In 2009, she began working from home. That condition of employment alleviated her anxiety concerns. She stopped needing medication. She continued to work successfully from home until she was discharged on March 5, 2024.

5. During COVID, Defendant transitioned to a remote workforce. By then, Plaintiff had been working from home for 11 years. In 2023, Defendant announced it was requiring all

1

remote employees to start working in the office (if they lived within 50 miles of a physical location). Plaintiff lived in Lawrence, Kansas, so she was within that radius.

6.     In response, Plaintiff requested to continue working from home as a reasonable accommodation for her anxiety. She supported her request with a medical opinion provided by the same doctor who had treated her for anxiety while Plaintiff was a student, just before she started working for Defendant. The same doctor had helped Plaintiff request and receive accommodation for her anxiety while she was a student.

7.     Defendant rejected Plaintiff's request, stating that it did not believe Plaintiff had a disability. Plaintiff asked what additional information was needed. Defendant said its decision was not reviewable or subject to appeal, but Plaintiff could provide additional information if she chose.

8.     Eventually, Plaintiff hired an attorney, and asked her doctor to provide additional support for his medical opinion that Plaintiff's anxiety was a disability that required the reasonable accommodation of working from home. Plaintiff and her attorney provided this information to Defendant. But Defendant continued to reject Plaintiff's request for accommodation.

9.     Plaintiff and her attorney informed Defendant that Plaintiff was meeting with a psychologist for an evaluation, and the psychologist would provide a more detailed opinion as to Plaintiff's condition, its symptoms, and the need for accommodation.

10.     Plaintiff and her attorney requested additional time for Plaintiff to receive an additional medical opinion, but Defendant denied Plaintiff's request, and Plaintiff's supervisor issued Plaintiff written discipline for not reporting to the office.

11.     After the written discipline, Plaintiff reported to the office to work, and suffered significant anxiety symptoms that interfered with her ability to work.

12.     Plaintiff learned that her supervisor was discussing Plaintiff's attorney and requests for accommodation in the presence of other employees, who did not need access to that

2

information. Plaintiff complained to Defendant about the supervisor, because she thought her legal rights were being violated.

13.    Defendant investigated Plaintiff's complaint, and substantiated part of the complaint. The same day that Defendant issued its findings, Plaintiff's supervisor discharged Plaintiff.

14.    Plaintiff demands a trial by jury and seeks all legal and equitable relief available under the ADA.

**PARTIES**

15.    **Plaintiff Whitney Bachamp-Schroeder** is an adult female domiciled in Kansas.

16.    From June 16, 2008 to March 5, 2024, Plaintiff was employed by Defendant as a Claims Adjuster.

17.    During Plaintiff's employment, she had a chronic medical condition that qualified as a "disability" under the ADA. Plaintiff had a diagnosable anxiety condition that substantially limited one or more major life activities, including her ability to work around others, perform in the presence of other employees, present information in front of other employees. Plaintiff's symptoms meet the criteria for Social Anxiety Disorder. She has suffered severe symptoms of anxiety since childhood, the intensity of the symptoms are severe, and the extent of the symptoms negatively impacted her social, occupational, and her daily functioning.

18.    As defined by 42 U.S.C. § 12102(1), Plaintiff is an individual with a "disability" during her employment, in that had a psychological impairment that substantially limited one or more of her major life activities, of which Defendant was aware.

19.    As defined by 42 U.S.C. § 12111(8), Plaintiff was a "qualified individual" through her employment with Defendant because she was an individual who, with or without reasonable accommodation, could perform the essential functions of her job.

20.    As defined by 42 U.S.C. § 12111(9), Plaintiff requested a "reasonable accommodation" during her employment with Defendant in that Plaintiff requested to continue working remotely, as she had done 2009, and as Defendant allowed employees to do if they lived more than 50 miles from a physical location.

21.    **Defendant Farmers Insurance Company, Inc.** ("Farmers") is a corporation that conducts ongoing business in the State of Kansas.

22.    As defined by 42 U.S.C. § 12111(7), Farmers is a "person" because it is a corporation.

23.    Farmers is an "employer" as defined by 42 U.S.C. § 12111(5), because it had 15 or more employees throughout Plaintiff's employment, and it is therefore a "covered entity" as defined by 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEEDINGS

24.    On or about May 3, 2024, Plaintiff filed a Charge of Discrimination with the KHRC and EEOC, alleging disability discrimination and retaliation. *Exhibit A* (incorporated herein by reference).

25.    On April 3, 2025, the EEOC issued Plaintiff a Notice of the Right to Sue. *Exhibit B* (incorporated herein by reference). Plaintiff commenced this civil action within 90 days of her receipt of the EEOC Notice of Right to Sue.

## PARTICULARS

26.    Plaintiff was employed by Defendant from June 16, 2008 until she was discharged on March 5, 2024.

27.    Throughout Plaintiff's employment she was employed as an auto claims adjuster. At the time of her discharge, her official Job Title was "Regional Claim Owner III." The essential functions of that job did not include working at Defendant's place of business.

28. Throughout the time that Plaintiff held the title of "Regional Claim Owner III," she could perform the essential functions of the job.

29. When Plaintiff started working for Defendant in 2008, she reported to Defendant's office in Olathe, Kansas.

30. During 2009, after she was fully trained and capable of performing her job, Plaintiff requested permission to work remotely from her home. Plaintiff was moving farther away from the office. Defendant approved Plaintiff's request.

31. Working from home helped alleviate Plaintiff's anxiety symptoms, and she no longer required medication, which had previously been prescribed.

32. During Plaintiff's employment, she disclosed her anxiety to her supervisors. Plaintiff told her supervisors that she was unable to give presentations or instruct other employees in person due to her anxiety. Plaintiff's supervisors advised Plaintiff that if she wanted to earn more, or be promoted, she needed to return to work in the office and give presentations to others. Plaintiff explained that she was uncomfortable working in the office due to her anxiety. Plaintiff continued working from home with permission from her supervisors.

33. Plaintiff was a high-performer who excelled in her job, yet chose to stay in her entry-level position instead of seeking promotions due to her anxiety.

34. During 2020, due to the COVID-19 pandemic, Defendant primarily transitioned to a virtual workforce. Plaintiff continued working from home under substantially the same terms, conditions, and privileges of employment that she had worked under since 2009.

35. On or about May 11, 2023, Defendant announced that it was shifting to a hybrid work environment starting in September of that year. Defendant announced that all employee who lived within a 50-mile radius of a Farmer's office would be classified as Hybrid and required to report to an office three times per week. Employees who lived farther than 50 miles from an office

would remain virtual employees. Defendant's announcement did not inform employees of their right or ability to request an accommodation for a disability.

36. On or about July 27, 2023, Defendant announced that the hybrid workforce policy would take effect on October 2, 2023.

37. On or about September 8, 2023, Defendant announced that some hybrid employees would only be required to report to the office two days per week. That included Plaintiff.

38. After Defendant announced its hybrid workforce policy on May 11, 2023, Plaintiff started speaking with her supervisor about whether she would be forced to return to the office, or if she could continue working remotely due to her anxiety. Plaintiff's supervisor supported her ability to work remotely, because she had done it successfully for a number of years.

39. Plaintiff and her supervisor asked if Plaintiff would be allowed to continue working from home if she moved farther than 50 miles away from the office. Defendant's Human Resources office informed Plaintiff's supervisor that if she moved, she would receive a reduction in her hourly rate.

40. Plaintiff told her supervisor that she did not want to suffer a reduction in pay. Eventually, Plaintiff's supervisor advised Plaintiff to submit a doctor's note to Human Resources to request permission to continue working from home.

41. On or about September 21, 2023, Plaintiff's doctor sent correspondence to Defendant stating, "It is my medial opinion that Whitney Bachamp-Schroeder has Anxiety Disorder and I recommend that she be allowed to continue to work from home."

42. In response, Defendant provided a Reasonable Accommodation Certification Form for Plaintiff's doctor to complete. Plaintiff's doctor completed the Form on or about September 26, 2023 and submitted it to Defendant.

43. On or about October 3, 2023, Defendant sent Plaintiff's doctor a memo requesting additional information. Plaintiff's doctor provided the information and returned the form.

44. On or about October 11, 2023, Defendant sent Plaintiff's doctor another memo requesting additional information. Plaintiff's doctor provided the information and returned the form.

45. On October 20, 2023, Defendant informed Plaintiff her request was denied because Defendant concluded that Plaintiff did not have a "disability."

46. Minutes later, Plaintiff asked Defendant to "specifically" explain what additional information Defendant needed.

47. On October 31, 2023, Defendant told Plaintiff there was "no appeal or escalation process" but she could provide additional information.

48. On or about November 15, 2023, Plaintiff's doctor submitted a second letter to Defendant, further describing why his medical opinion was that Plaintiff's "Anxiety Disorder" should be accommodated with the ability to work from home.

49. On December 8, 2023, Defendant informed Plaintiff that her request to continue working from home was denied as previously stated, because Defendant concluded Plaintiff did not have a "disability."

50. Plaintiff hired an attorney. On December 18, 2023, Plaintiff's attorney submitted a letter to Defendant, stating that Plaintiff's anxiety was a disability under the Americans with Disabilities Act, arguing that allowing Plaintiff to continue working from home was a reasonable accommodation, and informing Defendant that they were investigating the matter for discrimination.

51. As of December 18, 2023, Plaintiff was still working from home, and Defendant had not issued Plaintiff any disciplinary action or threatened her with disciplinary action.

52.    Plaintiff kept her supervisor informed of the status of her request for an accommodation, her medical condition, the fact that she hired an attorney, and requested to continue working from home until the issue was finally resolved.

53.    On January 2, 2024, Defendant issued Plaintiff a Memo stating that her request was being denied, because Defendant concluded that Plaintiff did not have a "disability."

54.    Plaintiff's attorney communicated with Defendant's attorney. Defendant's attorney informed Plaintiff's attorney that if Plaintiff provided additional documentation regarding her disability, Defendant would consider it.

55.    Plaintiff made an appointment with a psychologist to undergo a psychodiagnostic evaluation. Plaintiff made an appointment for February 20, 2024. Plaintiff notified her immediate supervisor of the appointment, the reason for the appointment, and that she would provide Defendant a copy of the psychologist's evaluation when it was complete.

56.    On February 7, 2024, Defendant issued Plaintiff a disciplinary action titled, "FINAL NOTICE – POLICY VIOLATION." Plaintiff had not received prior discipline. The disciplinary action informed Plaintiff that she was required to report to the office two days per week beginning the week of Monday, February 12, 2024 at the risk of being terminated for not doing so.

57.    Plaintiff, through her attorney, requested an extension to the February 12, 2024 deadline until after the psych eval was complete. Defendant denied Plaintiff's request.

58.    Plaintiff was able to select the days she would report to the office, so she picked Monday, February 12, 2024. That was the day after the Super Bowl. Plaintiff selected that day because she thought less people would be in the office that day.

59.    On February 12, 2024, Plaintiff reported to work, and the private office she requested was unavailable. Plaintiff's anxiety symptoms interfered with her ability to work. Those

symptoms included sweating, dry lips, stomach pain, irrational thoughts, inability to focus, and others. When Plaintiff works from home, anxiety symptoms do not interfere with Plaintiff's ability to work like they do when Plaintiff works in the office.

60.    On February 13, 2024, Plaintiff worked from home. She was informed that her immediate supervisor was discussing Plaintiff's attorney and requests for accommodation in the presence of other employees who had no reason to know.

61.    On February 14, 2024, Plaintiff submitted a written complaint to Defendant about her supervisor discussing Plaintiff's situation in the presence of other employees. Plaintiff reported that she had a disability, requested an accommodation, had provided medical documentation to support her request, had hired an attorney, and believed it was illegal for Plaintiff's supervisor to be openly discussing Plaintiff's situation in the presence of other employees.

62.    On February 15, 2024, Plaintiff informed her immediate supervisor that she intended to work from home the rest of that week. Plaintiff's immediate supervisor asked Plaintiff what days she planned on working the next week. Plaintiff continued working from home.

63.    On February 20, 2024, Plaintiff attended the evaluation with the psychologist. A follow-up evaluation was scheduled for March 6, 2024. Plaintiff informed her immediate supervisor of the follow-up appointment.

64.    On March 5, 2024, Defendant notified Plaintiff, via phone and in writing, that the investigation of her complaint was complete. The written notice said Plaintiff's "allegations are partially substantiated and appropriate action will be taken." Defendant informed Plaintiff that retaliation was prohibited.

65.    On March 5, 2024, Plaintiff informed Human Resources that she had a follow-up appointment with the psychologist the next day, and that his findings would be provided to Defendant as soon as the report was ready.

66.    Later that afternoon, Plaintiff's immediate supervisor called Plaintiff. She told Plaintiff she knew the investigation of Plaintiff's complaint was completed. She asked Plaintiff if she was coming to the office that day. Plaintiff said she was working from home and working on providing additional medical information to support her request for accommodation. Plaintiff had already requested PTO for the next week, which was approved, and informed her supervisor of her second psych eval appointment for the following day. Plaintiff's supervisor then told Plaintiff she was terminated effective immediately and instructed Plaintiff to shut down her computer.

67.    Defendants withheld Plaintiff's 2023 bonus, which was due to be paid shortly after Plaintiff's discharge. Other employees who were terminated received their bonuses. Plaintiff earned the bonus during 2023 while she was still employed.

## COUNT I
### ADA - Discrimination & Failure to Accommodate
### 42 USC § 12112

68.    Plaintiff hereby incorporates every other allegation in this pleading.

69.    During Plaintiff's employment, she had a "disability" as alleged above.

70.    Plaintiff could perform all essential functions of her position with the reasonable accommodation of being allowed to work from home.

71.    Plaintiff requested to continue working from home as a reasonable accommodation for her disability. Working from home helped Plaintiff excel at her job.

72.    Working from home was a reasonable accommodation that did not cause undue burden or expense to Defendant. Plaintiff worked from home for over 14 years prior to Defendant announcing its hybrid workforce policy. After Defendant created the hybrid workforce policy, Defendant allowed similarly-situated employees to continue working from home if they lived further than 50 miles from the office, even without a disability.

73.    Defendant refused to allow Plaintiff to continue working from home.

74. Defendant failed to engage in the interactive process with Plaintiff, because it erroneously concluded that Plaintiff did not have a disability.

75. Defendant issued Plaintiff disciplinary action and threatened her with discharge.

76. Defendant refused to extend Plaintiff's return to work date until after her psychological evaluation was complete.

77. Defendant discharged Plaintiff.

78. Defendant engaged in the foregoing acts and omissions on the basis of Plaintiff's disability.

79. The foregoing acts and omissions related to the terms, conditions, and privileges of Plaintiff's employment and caused Plaintiff to suffer some harm.

80. Defendant's conduct caused Plaintiff to suffer damages.

81. The conduct alleged herein was done with malice or a reckless indifference to Plaintiff's rights, making Defendant liable for punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from similar conduct.

WHEREFORE, Plaintiff prays for judgment finding Defendant liable for Count I, and for actual, compensatory and punitive damages, equitable relief, costs, reasonable attorney and expert fees, and for such other relief the Court deems just and proper.

## COUNT II
### ADA – Interference & Retaliation for Exercising ADA Rights
### 42 USC § 12203(b)

82. Plaintiff incorporates by reference every other allegation in this pleading.

83. Plaintiff exercised her ADA rights by requesting reasonable accommodations for her disability, by hiring an attorney, and by opposing Defendant's refusal to provide Plaintiff with reasonable accommodation for her disability.

84.    Defendants retaliated against Plaintiff for exercising her rights under the ADA, as alleged in the preceding paragraph, thereby interfering with Plaintiff's ADA rights, by:

    a.    Refusing to specify what additional information Plaintiff needed to provide to validate her disability.

    b.    Issuing Plaintiff disciplinary action and threatening her with discharge.

    c.    Refusing to extend Plaintiff's return to work date until she finished her psychological examination.

    d.    Discussing Plaintiff's medical condition and requests for accommodation in the presence of non-management employees.

    e.    Discharging Plaintiff from her employment.

    f.    Withholding the bonus Plaintiff earned in 2023.

85.    The foregoing acts and omissions were coercive, intimidating and/or threatening to Plaintiff, or otherwise interfered with her free exercise of her ADA rights.

86.    The above referenced acts related to the terms, conditions, and privileges of Plaintiff's employment and caused Plaintiff to suffer some harm.

87.    Defendant's conduct caused Plaintiff to suffer damages.

88.    The conduct alleged herein was done with malice or a reckless indifference to Plaintiff's rights, making Defendant liable for punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from similar conduct.

WHEREFORE, Plaintiff prays for judgment finding Defendant liable for Count II, and for actual, compensatory and punitive damages, equitable relief, costs, reasonable attorney and expert fees, and for such other relief the Court deems just and proper.

**COUNT III**
**ADA – Retaliation for Opposing Unlawful Acts**
**42 U.S.C. § 12203(a)**

89.    Plaintiff incorporates by reference every other allegation in this pleading.

12

90.     Plaintiff engaged in protected activity by opposing acts that she reasonably believed were unlawful acts of discrimination, harassment, or retaliation.

91.     Plaintiff engaged in protected activity on February 14, 2024, by submitting a written complaint to Defendant regarding conduct that she reasonably believed was illegal disability discrimination and retaliation.

92.     Defendant retaliated against Plaintiff because of her written complaint by:

  a.  Refusing to extend Plaintiff's return to work date until she finished her psychological examination.

  b.  Discharging Plaintiff from her employment.

  c.  Withholding the bonus Plaintiff earned in 2023.

93.     The above referenced acts related to the terms, conditions, and privileges of Plaintiff's employment and caused Plaintiff to suffer some harm.

94.     Defendant's conduct caused Plaintiff to suffer damages.

95.     The conduct alleged herein was done with malice or a reckless indifference for Plaintiff's rights, making Defendant liable for punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from similar conduct.

WHEREFORE, Plaintiff prays for judgment finding Defendant liable for Count III, and for actual, compensatory and punitive damages, equitable relief, costs, reasonable attorney and expert fees, and for such other relief the Court deems just and proper.

## **JURY TRIAL DEMAND & DESIGNATION OF PLACE OF TRIAL**

Plaintiff hereby demands a jury trial in Kansas City, Kansas for all claims made herein.

**RALSTON KINNEY, LLC**

/s/ *Kenneth D. Kinney*
Kenneth D. Kinney – D.Kan. #78544
Thomas F. Ralston – D.Kan. #78212
4717 Grand Avenue, Suite 300
Kansas City, Missouri 64112
Tel: (816) 298-0086
Fax: (816) 298-9455
Email: ken@rklawllc.com
Email: tom@rklawllc.com

**ATTORNEYS FOR PLAINTIFF**